TERRI F. LOVE, Judge.
_JjThe Orleans Parish Juvenile Court adjudicated C.J.[1] delinquent on the charges *1136 of trespass and resisting an officer. The court imposed a total of six months, three months per count, to the Department of Public Safety and Corrections. The court suspended the sentence and placed C.J. on active probation for six months. C.J. appeals the judgment and sentence of the juvenile court. We find that the juvenile court judge correctly adjudicated C.J. delinquent for criminal trespass and resisting an officer and affirm. However, we find that C.J.’s commitment of three months for the trespass offense was excessive and that the juvenile court judge did not articulate her considerations of the guidelines or the factual basis to justify the imposition of a consecutive sentence and remand in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

C.J. was charged by delinquency petition with one count of criminal trespass in violation of La. R.S. 14:63, one count of resisting an officer in violation of La. R.S. 14:108, and one count of simple criminal damage to property in violation of La. R.S. 14:56. At the adjudication hearing the juvenile court judge found C.J. to be delinquent for criminal trespass and resisting an officer.
12At the adjudication hearing, Mr. Terrance Davis, the school administration manager and director of athletics for 0. Perry Walker High School, testified that on October 13, 2009, he was supervising students on the school’s grounds after school concluded for the day. During this time, C.J. and a few other students attempted to enter the administrative building for band practice. Mr. Davis informed the students that they could not go inside the building because they were tardy for band practice. He further told them to leave the campus.
Mr. Davis testified that after he instructed C.J. and the students to leave the campus, C.J. “said some words” and “kind of stood off to the side.” The remaining students immediately left the school’s campus without further incident. C.J. also initially walked off the campus. However, moments later, C.J. attempted to enter the same school building while Mr. Davis was speaking with a student’s parent.
Lieutenant Timothy Morris, a duty officer for the high school, witnessed Mr. Davis inform C.J. that he was not allowed in the building. Upon seeing C.J. attempt to enter the school again, Lieutenant Morris warned C.J. that he could not enter the school. C.J. tried to bypass Lieutenant Morris, at which point Lieutenant Morris stopped C.J. and again informed him he was not allowed in the school. When C.J. continued to try to enter the building, Lieutenant Morris attempted to arrest C.J. An oral altercation ensued between Lieutenant Morris and C.J.
Mr. Davis heard the altercation and walked over to Lieutenant Morris and C.J. In an attempt to gain control of the situation, Mr. Davis asked C.J. to calm down. However, the altercation between C.J. and Lieutenant Morris escalated into a physical struggle. C.J. was detained and arrested for criminal trespass.
Following the disposition hearing, the juvenile court judge adjudicated C.J. delinquent and imposed a six-month sentence, three months for each count, in the [^Department of Public Safety and Corrections. The juvenile court judge then suspended the sentence and placed C.J. on active probation for six months.

ASSIGNMENTS OF ERROR

C.J. argues that the juvenile court judge erred in finding beyond a reasonable doubt that C.J. committed the criminal offenses of criminal trespass and resisting an offi *1137 cer, by imposing an excessive punishment of three months for a first offense of criminal trespass, and in imposing an excessive sentence by ordering the sentences for criminal trespass and resisting an officer to be served consecutively.

STANDARD OF REVIEW

“The State’s burden of proof in a juvenile delinquency proceeding, just as in a criminal proceeding against an adult, is to prove every element of the offense alleged beyond a reasonable doubt.” State in the Interest of KM., 10-0649, p. 4 (La.App. 4 Cir. 9/29/10), 49 So.3d 460, 463.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Louisiana Supreme Court held that the Jackson standard is the clear standard of review for Louisiana appellate courts. State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18. This standard of review is applicable to juvenile delinquency cases. State in the Interest of T.E., 00-1810, p. 4 (La.App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
“Appellate review of juvenile cases extends to law and fact.” State in the Interest of T.T., 09-1201, p. 2 (La.App. 4 Cir. 1/13/10), 30 So.3d 220, 221. “Nevertheless, we recognize that the juvenile judge observes the conduct and 14demeanor of the witnesses and is thus in a far better position to determine credibility and weigh the evidence.” State in the Interest of D.L., 30,878, p. 3 (La.App. 2 Cir. 6/24/98), 715 So.2d 623, 626. Thus, we afford great deference to the judge’s findings of fact and to his determination of credibility of the witnesses and the weight to be given to their testimony. State in the Interest of J.N., 07-1229, p. 8 (La.App. 4 Cir. 5/7/08), 984 So.2d 910, 915. Therefore, in light of the record reviewed in its entirety, the court of appeals may not reverse the findings of the trial court unless manifestly erroneous or clearly wrong. See State in the Interest of D.R., 10-0405, p. 8 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 931.

CRIMINAL TRESPASS AND RESISTING AN OFFICER

In his first assignment of error, C.J. asserts that the trial court erred in finding that the elements of trespass were proven beyond a reasonable doubt because there is nothing to indicate C.J. entered O. Perry Walker High School without express, legal, or implied authorization.
La. R.S. 14:63, which defines criminal trespass, provides in pertinent part:
A. No person shall enter any structure, watercraft, or movable owned by another without express, legal, or implied authorization.
B. No person shall enter upon immovable property owned by another without express, legal, or implied authorization.
C. No person shall remain in or upon property, moveable, or immovable, owned by another without express, legal, or implied authorization.
D. It shall be an affirmative defense to a prosecution for a violation of Subsection A, B, or C of this Section, that the accused had express, legal, or implied authority to be in the movable or on the immovable property.
Mr. Davis testified that he informed C.J. that he could not enter the school’s administrative building for band practice due to his tardiness. Mr. Davis stated that the *1138 school has a policy, which precludes tardy students from attending band | ^practice. Mr. Davis further stated that he instructed C.J. to leave the campus.
Lieutenant Morris testified that he observed Mr. Davis inform C.J. that he was not allowed to enter the school. According to Lieutenant Morris, C.J. attempted to enter the school again, disregarding Mr. Davis’ orders. Lieutenant Morris stated that he informed C.J. that he was not allowed inside the building. C.J. ignored Lieutenant Morris and walked toward the school.
Through the corroborated testimony of both Mr. Davis and Lieutenant Morris, the State proved that C.J. entered and remained upon the school’s property without express, legal, or implied authorization from any person of authority at 0. Perry Walker High School.
C.J. claims he possessed implied consent to enter the school building, which he asserts is an affirmative defense to criminal trespass. However, C.J. did not assert this defense at the adjudication hearing, nor did he offer any defense witnesses or a case-in-chief during the hearing.
While C.J. was authorized to enter 0. Perry Walker High School during the normal school hours, he was no longer authorized once school hours concluded for the day. After being told that he could not enter the school to participate in band practice after school hours, he was in violation of R.S. La. 14:63 by remaining on the property without permission. As a result, the prosecution proved beyond a reasonable doubt that C.J. was not authorized to remain on the property pursuant to La. R.S. 14:63(C).
C.J. next contends that Lieutenant Morris did not have probable cause to arrest him for trespassing; thus, he could resist the unlawful arrest. We find to the contrary, Lieutenant Morris arrested C.J. after having sufficient probable cause to | (jknow that C.J. was trespassing at 0. Perry Walker High School, and C.J. unlawfully resisted the arrest.
La. R.S. 14:108(A) provides, in pertinent part:
Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
In determining whether a defendant unlawfully resisted his arrest, it must be ascertained whether probable cause existed to arrest the defendant. State v. Ceaser, 02-3021, p. 4 (La.10/21/03), 859 So.2d 639, 643. “Probable cause exists when the facts and circumstances known to the arresting officer, and of which he has reasonably trustworthy information, are sufficient to justify a person of ordinary caution in believing the person to be arrest had committed a crime.” State v. Lindsay, 388 So.2d 781, 783 (La.1980).
The State proved that Lieutenant Morris had probable cause to arrest C.J. upon hearing Mr. Davis inform C.J. that he was not allowed on the property. Lieutenant Morris testified that he observed Mr. Davis tell C.J. to leave the school’s campus and that C.J. failed to comply with this order. When C.J. reentered the campus, Lieutenant Morris stopped C.J. as he walked toward the school building, and an oral altercation ensued. Lieutenant Morris then attempted to place C.J. under arrest for trespassing upon the school grounds. However, the oral altercation *1139 escalated into a physical altercation. With the uncontradicted testimony of Lieutenant Morris, the State clearly proved beyond a reasonable doubt that C.J. resisted Lieutenant Morris while making the lawful arrest when C.J. knew or had 17reason to know that Lieutenant Morris was acting in his official capacity.
Based on the record, we conclude that the juvenile court judge, as the rational trier of fact, found, after examining both the facts and the law, that the essential elements of the charged offenses were proven beyond a reasonable doubt. We cannot conclude that this decision was manifestly erroneous or clearly wrong. Accordingly, we affirm the judgment adjudicating C.J. delinquent for criminal trespass and resisting an officer.

EXCESSIVE PUNISHMENT

C.J. was found guilty for a first offense of criminal trespass. Thereafter, the juvenile court judge committed him to three months in the Department of Public Safety and Corrections. The juvenile court judge then suspended the sentence, along with the three-month sentence for resisting an officer, and placed C.J. on active probation for six months. C.J. contends that the juvenile court judge erred in sentencing C.J. to three months imprisonment for a first offense criminal trespass instead of the permitted thirty days provided by the statute.
La. R.S. 14:63(G) provides the penalties that shall be imposed for a violation of criminal trespass:
(1) For the first offense, the fine shall be not less than one hundred dollars and not more than five hundred dollars, or imprisonment for not more than thirty days, or both.
(2) For the second offense, the fine shall be not less than three hundred dollars and not more than seven hundred fifty dollars, or imprisonment for not more than ninety days, or both.
(8) For the third offense and all subsequent offenses, the fine shall be not less than five hundred dollars and not more than one thousand dollars, or imprisonment for not less than sixty days and not more than six months, or both, and forfeiture to the law enforcement authority of any property seized in connection with the violation.
(4) A person may be convicted of a second offense and |sany subsequent offenses regardless of whether any prior conviction involved the same structure, watercraft, movable or immovable property and regardless of the time sequence of the occurrence of the offenses. (Emphasis added).
La. Ch.C. art. 900(A) governs the duration of a misdemeanor-grade disposition as follows:
No judgment of disposition shall remain in force for a period exceeding the maximum term of imprisonment for the offense which forms the basis for the adjudication, except that if the child is placed on probation, the term of probation may extend for a maximum of two years, or for such longer period of time as the child is a full-time participant in a juvenile drug court program operated by a court of this state, if such participation has been ordered by the court as a condition of the child’s probation. The court shall give a child credit for time spent in secure detention prior to the imposition of disposition.
Therefore, for a first offense of criminal trespass the defendant shall be fined between $100 and $500 or imprisoned for not more than thirty days. La. R.S. 14:63(G)(1); La. Ch.C. art. 900(A). However, at the disposition hearing in this matter, the juvenile court judge elected to *1140 commit C.J. to three months in the Department of Public Safety and Corrections for the delinquency adjudication of criminal trespass. Since the maximum commitment issuable was thirty days, the juvenile court judge’s commitment in the Department of Public Safety and Corrections exceeded the maximum term of imprisonment forming the basis of the adjudication according to La. R.S. 14:53 and La. Ch.C. art. 900(A).
The juvenile court judge suspended C.J.’s sentence and ordered that he serve six months of active probation. The juvenile court judge’s order of six months of active probation was not excessive, as the term of probation may be up to two years when the delinquent child is placed on probation pursuant to La. Ch. C. art. 900.
LFor these reasons, C.J.’s commitment of three months for the trespass offense was excessive, while his six-month term of active probation was permissible. Thus, we remand to the juvenile court for the imposition of a commitment of time within the sentencing range, as provided in La. R.S. 14:63(G)(1).

EXCESSIVE SENTENCE

Lastly, C.J. asserts that the juvenile court judge erred in imposing an excessive sentence by ordering the sentences be served consecutively. He further claims that the juvenile court judge failed to state the considerations and factual basis for imposing a consecutive sentence.
The Louisiana Constitution prohibits the imposition of excessive punishments. La. Const, art. I, § 20. Under the general guidelines provided for juvenile cases in La. Ch.C. art. 901, the adjudicating judge should impose the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the best interest of society.
La. Ch.C. art. 901 provides, in pertinent part:
A. In considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
B. The court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.
C. Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists:
(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.
110(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.
(3) A lesser disposition will deprecate the seriousness of the child’s delinquent act.
(4) The delinquent act involved the illegal carrying, use, or possession of a firearm.
D. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of the disposition or probation:
(1) The child’s delinquent conduct neither caused nor threatened serious harm.
(2) The child did not contemplate that his delinquent conduct would cause or threaten serious harm.
*1141 (3) The child acted under strong provocation.
(4) There were substantial grounds tending to excuse or justify the child’s delinquent conduct, though failing to establish a defense.
(5) The victim of the child’s delinquent conduct induced or facilitated its commission.
(6) The child or his family has compensated or will compensate the victim of his delinquent conduct for the damage or injury that the victim sustained.
(7) The child has no history of prior delinquency or has led a law-abiding life for a substantial period of time before the commission of the instant delinquent act.
(8) The child’s delinquent conduct was the result of circumstances unlikely to recur.
(9) The character and attitudes of the child indicate that he is unlikely to commit another delinquent act or crime.
(10) The child is particularly likely to respond affirmatively to probationary treatment.
(11) The commitment of the child would entail excessive hardship to himself or his family.
When excessive commitment is complained of in a juvenile proceeding, “the record must be reviewed to determine whether the juvenile court judge imposed the least restrictive disposition consistent with the circumstances of the case, the child’s needs, and the best interest of society.” State in the Interest of T.S., 04-1111, p. 5 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 79. A juvenile court judge has |nmuch discretion, because of the special nature of the proceedings, but the juvenile court judge “must balance the needs of the child with the best interest of society.” Id., 04-1111, p. 5, 900 So.2d at 79-80.
Thus, the appellate court, in reviewing for excessivenéss, “must first ascertain whether the lower tribunal took cognizance” of the criteria set forth in La. Ch.C. art. 901 and “whether the record reflects an adequate factual basis for the commitment imposed.” State in the Interest of T.L., 28,564, p. 2 (La.App. 2 Cir. 5/8/96), 674 So.2d 1122, 1124. “Following that determination, the reviewing court need only explore for constitutional exces-siveness in light of the circumstances of the case and the background of the juvenile.” Id.
C.J. was adjudicated delinquent of two misdemeanor-grade acts arising out of the same incident. The Louisiana’s Children’s Code, however, is silent on the issue of imposing concurrent or consecutive sentences for multiple offenses. Under these circumstances, the Louisiana’s Children Code directs the court to proceed in accordance with the Louisiana Code of Criminal Procedure. La. Ch.C. art. 803.
Under the criminal code, La. C. Cr. P. 883 provides in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
The Louisiana Supreme Court held “[a]s a general rule” that “sentences served for crimes arising out of a single course of conduct are served concurrently instead of consecutively.” State v. Duvio, 511 So.2d 821, 824 (La.App. 5th Cir.1987). This Court held that:
Louisiana law favors concurrent sentences; however, a 112trial court retains the discretion to impose consecutive sen *1142 tences on the basis of other factors, including the offender’s past criminality, violence in the charged crimes, or the risk that the defendant poses to the general safety of the community.
State v. Dempsey, 02-1867, p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1087, 1040.
Furthermore, the Louisiana Supreme Court held that an “imposition of consecutive sentences for a conviction arising out of a single course of criminal conduct requires particular justification.” Duvio, 511 So.2d at 824. The juvenile court judge’s failure to comply with the guidelines does not necessarily require the case be remanded where the record adequately reflects that the trial court considered the guidelines. State in the Interest of K.H., 612 So.2d 1036, 1039 (La.App. 2nd Cir.1993). However, the Louisiana Children’s Code specifically provides that the juvenile court judge should state, for the record, the considerations taken into account in imposing a sentence. La. Ch.C. art. 903(A)(1).
In the present case, the juvenile court judge did not articulate her considerations of the guidelines or the factual basis to justify the imposition of a consecutive sentence. For these reasons, we remand for the juvenile court judge to sentence C.J. in accordance with La. Ch.C. art. 901.

DECREE

The judgment of the juvenile court judge finding C.J. guilty of criminal trespass and resisting an officer is affirmed. The matter is remanded for sentencing in accordance with La. R.S. 14:63(G)(1) and La. Ch.C. art. 901.
AFFIRMED IN PART; REMANDED IN PART.

. As C.J. is a juvenile, he will be referred to by his initials. La. C.Ch. art. 412.